UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
RUSSELL HUNTER, Individually and on behalf of all
others similarly situated,

                                    Plaintiff,

                  v.

BLUE RIDGE BANKSHARES, INC., BRIAN K.
PLUM, JUDY C. GAVANT, AND ANDREW H.
MOSER,

                                    Defendants.

--------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

23-CV-8944
(Gujarati, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

    Plaintiff Russell Hunter ("Hunter"), individually and on behalf of all persons similarly

situated, brings this putative securities fraud class action against Defendants Blue Ridge

Bankshares, Inc., Brian K. Plum, Judy C. Gavant, and Andrew H. Moser[1] (collectively,

"Defendants," and together with Hunter, the "Parties").  *See, e.g.,* Dkt. No. 21.  Hunter alleges

claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").

Dkt. No. 21 at 50-52.[2]  On May 13, 2024, the Court appointed Hunter as lead plaintiff and The

Rosen Law Firm, P.A., as Class Counsel.  Dkt. No. 16.  Hunter subsequently filed his first amended

complaint, Dkt. No. 18, and second amended complaint, Dkt. No. 21, for violations of the federal

securities laws.  The parties have reached a settlement agreement (the "Settlement Agreement" or

"Settlement") in this matter, *see* Dkt. No. 36, and Hunter now moves, unopposed, for preliminary

approval of the Settlement Agreement.  *See* Dkt. No. 33 (the "Motion").

    The Honorable Diane Gujarati, United States District Court Judge, referred the Motion to

the undersigned for a Report and Recommendation.  *See* February 7, 2025 Text Order.  For the

---

[1] The Clerk of the Court is directed to update the docket to add Defendants' counsel on behalf of Moser.

[2] Page citations are to the ECF-stamped pages.

reasons set forth below, the undersigned respectfully recommends that the Motion be granted. The undersigned also respectfully recommends that Defendants be directed to provide supplemental notices in accordance with The Class Action Fairness Act of 2005 ("CAFA"), reflecting amendments made to the Summary Notice[3] and Postcard Notice,[4] and to the Proposed Order.[5] *See* 28 U.S.C. § 1715(b).

## I.    Background

### A.    Factual Background

In pertinent part, the second amended complaint alleges that in or around June 2022, Blue Ridge hired Moser and appointed him as Chief Lending Officer ("CLO"). *See* Dkt. No. 21 ¶ 4. Soon after becoming CLO, Moser made a series of large loans outside of Blue Ridge's traditional expertise, including a $37.5 million loan in July 2022 to eSports company RekTGlobal, Inc., and a $23.7 million loan in August 2022 to a nominally non-profit educational institution, run for the benefit of a hedge fund, Colbeck Capital. *Id.* ¶¶ 2, 5, 45-81. The loans, which amounted to approximately $60 million (nearly 2.0% of Blue Ridge's total assets) were allegedly made without proper approvals and resulted in material misstatements in Blue Ridge's securities filings. *Id.* ¶¶ 5, 49, 54-81.

Indeed, though it is alleged Blue Ridge quickly determined the loans would not be repaid, it did not recognize these amounts as nonaccrual loans in the appropriate financial statements,

---

[3] "Summary Notice" means the Summary Notice of Pendency and Proposed Settlement of Class Action to be published on a national business newswire, substantially in the form attached as Dkt. No. 40-4. Dkt. No. 36 ¶ 1.39.

[4] "Postcard Notice means the postcard notice to be sent to Settlement Class Members substantially in the form attached hereto as Dkt. No. 40-6, and which shall contain information relating to, among other things, how to access the Long Notice, Stipulation, and file a Proof of Claim. *Id*. ¶ 1.22.

[5] "The Proposed Order" signifies the parties proposed preliminary approval order, at Dkt. No. 40-2.

instead "rolling" them over in violation of Generally Accepted Accounting Principles ("GAAP"). *Id*. ¶ 2. By failing to recognize these loans as troubled debt restructuring ("TDR") and nonaccrual in Blue Ridge's 2022 10-K, Defendants understated Blue Ridge's TDRs by 97% and its nonaccrual loans by 86%, which was confirmed by Blue Ridge's restated 2022 10-K. *Id*. ¶ 8.

When Blue Ridge eventually recognized the loans as nonaccrual in Q1 and Q2, 2023, its stock price fell, damaging investors. *Id*. In October 2023, when Blue Ridge restated its 2022 10-K, the stock price fell again. *Id*. ¶¶ 2, 10. Investors who purchased the stock during the Class Period, from February 3, 2023 to October 31, 2023, did so at artificially inflated prices, and were damaged by Defendants' alleged fraud. *Id*. ¶ 10.

### B.    Procedural History

On February 5, 2024, Hunter filed a motion to be appointed as lead class plaintiff and for The Rosen Law Firm, P.A. to serve as Class Counsel for the putative class. *See* Dkt. No. 9. Hunter subsequently filed a notice of non-opposition to his motion on February 5, 2024, which stated, among other things, that "[n]o other putative class member filed a motion for appointment as lead plaintiff" and that "[t]he deadline to file any opposition has passed." Dkt. No. 11.

On February 8, 2024, Judge Gujarati referred Hunter's February 5, 2024 motion to the undersigned. *See* February 8, 2024 Text Order; Dkt. No. 16. As set forth in the Court's May 13, 2024 Memorandum and Order, the Court granted Hunter's motion and appointed him as lead plaintiff and The Rosen Law Firm, P.A., as Class Counsel. *See* Dkt. No. 16. The Court also directed, in accordance with a stipulation filed by the parties and entered by the Court, *see* Dkt. Nos. 14, 15, that "the parties shall file, by May 28, 2024, a proposed order setting forth the date by which Hunter must file an amended complaint (if any) and the date by which Defendants must file a responsive pleading." Dkt. No. 16 Text Entry.

On June 12, 2024, Hunter filed his amended complaint, alleging additional Section 10(b) and 20(a) claims, but removing Beale as a Defendant and adding Section 20(a) claims against Moser.  *See* Dkt. No. 18.  On June 28, 2024, Plaintiff filed a second amended complaint to include Moser as a defendant in the case caption of that document; the second amended complaint is now the operative complaint herein.  *See* Dkt. No. 21; June 28, 2024 Text Order.

On July 29, 2024, Defendants requested a pre-motion conference seeking leave to file a motion to dismiss Hunter's second amended complaint.  *See* Dkt. No. 25.  In their pre-motion letter, Defendants argued that Hunter failed to state a claim under Section 10(b) of the Exchange Act because he failed to allege the necessary elements of actionable false statements and scienter.  *See id.* at 1-2.  Defendants further argued that Hunter's claim under Section 20(a) of the Exchange Act failed because it was derivative of his Section 10(b) claim, which failed.  *See id.* at 3.

In his August 7, 2024 response, Hunter argued, in pertinent part, that misstatements about the ReKT Loan's status TDR were factual and material, that Blue Ridge Bank's having restated its financial statements indicated falsity of the original financial statements, and that his second amended complaint sufficiently alleged scienter of Blue Ridge Bank's management and the imputation thereof to Blue Ridge Bank as an entity.  *See* Dkt. No 26 at 1-2.  Hunter's opposition letter also argued that the second amended complaint properly stated a claim under Section 20(a) of the Exchange Act.  *Id.* at 3.

On August 8, 2024, the parties jointly filed a motion seeking a stay of briefing on Defendants' motion to dismiss, pending mediation, arguing that if the mediation was successful and produced a settlement agreement, Defendants' motion to dismiss would be rendered moot.  Dkt. No. 27.  The Court granted the stay and denied without prejudice to renewal Defendants' request for a pre-motion conference.  *See* August 9, 2024 Text Order.

During the mediation, which occurred on December 5, 2024, the parties reached a settlement in principle to settle Hunter's claims on a class-wide basis. *See* Dkt. No. 31 at 1. The parties then filed the instant Motion on February 4, 2025. *See* Dkt. No. 33.

On February 7, 2025, Judge Gujarati referred this Motion to the undersigned for a report and recommendation. *See* February 7, 2025 Text Order.

On June 6, 2025, the undersigned held a telephonic preliminary fairness hearing, during which the Court requested the parties supplement their Motion by providing

> [] 1) their supplemental opt-out agreement (under seal); 2) a supplemental submission, in letter format, regarding the Defendants' ability to withstand a greater judgment; 3) updated summary and postcard notices, each containing a brief statement indicating class members may enter an appearance through an attorney if they desire; and 4) a lodestar calculation for The Rosen Law Firm's fees incurred to date. The parties also agreed on the record to providing class members with both email and postcard forms of notice.

*See* June 6, 2025 Minute Entry.

On June 9, 2025 Plaintiff filed the abovementioned documents and provided supplemental information in accordance with the Court's Order. *See* Dkt. Nos. 39-40.

### C.    The Settlement Agreement

On February 4, 2024, the Parties entered into the Settlement Agreement and executed a Settlement Stipulation[6] fully resolving all claims in this matter. *See* Dkt. Nos. 36. In accordance with the requirements of the CAFA, *see* 28 U.S.C. § 1715(b), on February 13, 2025, Defendants served notice of the proposed settlement and other required documents on 60 state and federal officials, including the Attorney General of the United States, the Board of Governors of the Federal Reserve, the Office of the Comptroller of the Currency's Litigation Division, the Attorneys

---

[6] "Settlement Stipulation" or "Stipulation" refers to the filing at Dkt. No. 36, as supplemented by Dkt. Nos. 39-40, which memorializes the parties' settlement.

General of each of the 50 states, the District of Columbia, and the United States Territories, and the Bureau of Financial Institutions of the Virginia State Corporation Commission. *See* Dkt. No. 37 ¶¶ 4-5. The Parties attached a proposed order, granting Plaintiff's motion for preliminary approval of the Settlement Agreement. *See* Dkt. Nos. 36-1. In accordance with the Court's June 6, 2025 Order, Plaintiff filed an updated Proposed Order granting Plaintiff's motion for preliminary approval of the Settlement Agreement, reflecting changes to the Summary Notice and Postcard Notice, as well as providing for email and Postcard Notice to all potential Class Members, where possible. *See* Dkt. No. 40-1. The material terms of the Settlement Agreement are analyzed below.

### i.    Class Members

The Settlement Class is defined as including all persons and entities who purchased the publicly traded common stock of Blue Ridge between February 3, 2023 and October 31, 2023 (the "Settlement Class Period"). Dkt. No. 36-1 ¶ 2. Excluded from the Settlement Class are

> [] Defendants and their families, the officers, directors and affiliates of Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has or had a controlling interest; and (b) Persons who suffered no compensable losses. Also excluded from the Settlement Class are those Persons who or which timely and validly submit a request for exclusion from the Settlement Class or whose exclusion from the Settlement Class is accepted by the Court. A request for exclusion is valid only if it is signed by the person seeking exclusion from the Settlement Class. Group opt-outs, including "mass" or "class" opt-outs, are not permitted.

Dkt. No. 36 ¶ 1.32.

### ii.    Financial Terms

Under the Settlement Agreement, within 21 calendar days of the Court's preliminary approval of the same and Defendants' counsel provision of necessary Escrow Account[7] information, including the bank name, tax ID, routing number, a designated payment instructions contact, and Form W-9, Defendants will pay $2,500,000.00 into the designated Settlement Fund.[8] *Id.* ¶¶ 1.31, 2.0.

The Settlement Fund will be the sole source of satisfaction for all Settlement Class Claims,[9] and "Defendants' sole financial obligation to [Hunter], the Settlement Class Members and [Class] Counsel under this Stipulation shall be [the $2.5 million payment], and under no circumstances shall Defendants have any obligation to make any other or greater payment to them for any purpose pursuant to the Settlement." *Id.* ¶ 2.1.

---

[7] "Escrow Account" means an interest-bearing escrow account established by the Escrow Agent. The Escrow Account shall be managed by the Escrow Agent, subject to the Court's supervisory authority, for the benefit of Plaintiff and the Settlement Class in accordance with the terms of the Stipulation and any order of the Court. Dkt. No. 36 ¶ 1.8.

[8] "Settlement Fund" means the Settlement Amount ($2.5 million) before any of the expenditures authorized herein. *Id*. ¶1.38.

[9] "Settlement Class Claims" means any and all claims, rights, demands, suits, liabilities, or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, under federal, state, local, foreign law, or any other law, rule, or regulation, both known and "Unknown Claims" as defined in § II.B 1.41, alleged or which could have been alleged by any Released Plaintiff Party against Defendants or against any other of the Released Defendant Parties in any court of competent jurisdiction or any other adjudicatory tribunal that arise out of, are based upon, are in any way related to, or are in consequence of any of the facts, allegations, transactions, matters, events, disclosures, non-disclosures, occurrences, representations, statements, acts, claims, omissions, or failures to act that were: (i) involved, set forth, or referred to in any of the complaints filed in the Action, that could have been filed in the Action, or that otherwise would have been barred by *res judicata* had the Action been fully litigated to a final judgment; or (ii) relate to the purchase or sale of Blue Ridge common stock during the Class Period. Provided, however, that Settlement Class Claims do not include any claims relating to the enforcement of the Settlement. *Id*. ¶ 1.33.

At the direction of Hunter's Counsel, the funds in the Escrow Account "shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation or (b) secured by instruments backed by the full faith and credit of the United States Government." *Id.* ¶ 2.2.

At any time after preliminary approval of the Settlement Agreement, Class Counsel can "disburse up to $100,000 from the Settlement Fund to pay reasonable and necessary Notice and Administration Costs[10] prior to the Effective Date.[11] After the Effective Date, additional amounts may be transferred from the Settlement Fund for [Class Counsel] to pay any additional reasonable and necessary Notice and Administration Costs without further Order of the Court." *Id.* ¶¶ 2.6, 7.0. The claims administrator, Strategic Claims Services ("SCS" and "Claims Administrator")— which has been retained by Class Counsel—will administer and calculate the claims submitted by

---

[10] "Notice and Administration Costs" means the costs and expenses reasonably and actually incurred by, and the reasonable fees charged by, the Claims Administrator in connection with notice dissemination and claims administration upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation: the cost of identifying and locating members of the Settlement Class; emailing Notice, mailing Postcard Notice and publishing the Summary Notice (such amounts shall include, without limitation, the actual costs of publication in national newswires, printing and mailing the Postcard Notice, and reimbursement to nominee owners for forwarding notice to their beneficial owners), soliciting claims from Settlement Class Members, assisting with the filing of claims, processing Proof of Claim, administering and distributing the Net Settlement Fund to Authorized Claimants, and paying escrow fees and costs, if any. *Id.* ¶ 1.18.

[11] "Effective Date" means the first date by which all of the events and conditions specified in § II.I8.0 of the Stipulation have occurred and/or been met[,]" including "(a) Approval by the Court of the Settlement, following the period set forth for CAFA Notice, and following notice to the Settlement Class and the Settlement Fairness Hearing as prescribed by Fed. R. Civ. P. 23; (b) The Settlement Amount has been paid into the Settlement Fund; (c) Defendants have not exercised their option to terminate the Stipulation pursuant to the Supplemental Agreement; and (d) Entry by the Court of the Judgment, which has become Final, or in the event that the Court enters an order of judgment not in all material respects in the form of the Judgment and none of the Parties elects to terminate this Settlement, the date that such alternative judgment becomes Final. *Id.* ¶¶ 1.7, 8.0.

Settlement Class Members[12] and oversee distribution of the settlement proceeds, net of costs, to Authorized Claimants.[13] *Id.* ¶¶ 1.4, 6.0.  The distribution checks will be drawn upon the Net Settlement Fund.[14] *Id.* ¶ 6.0.

### iii.    Notice to Class Members

Per the Settlement Agreement, within 10 business days after the Court enters the Proposed Order, Defendants shall provide Class Counsel with "Blue Ridge's transfer records concerning the identity of Settlement Class Members, including any names, addresses, and email addresses of Settlement Class Members and nominees or custodians that exist in such transfer records ('Class Information')." *Id.* ¶ 4.2.

Within 30 calendar days of the Court's entry of the Proposed Order, Class Counsel, through the Claims Administrator, shall cause the Stipulation and its exhibits, Order, the Long Notice,[15] and the Proof of Claim[16] to be posted on the Claims Administrator's website.  Dkt. No. 36-1 ¶ 14. The notice states, in pertinent part:

> If you purchased the publicly-traded common stock of Blue Ridge Bankshares, Inc. ("Blue Ridge") between February 3, 2023 and October 31, 2023, both dates inclusive (the "Class Period"), you could get a payment from a class action settlement (the "Settlement").  [] If approved by the Court, the Settlement will provide two million five hundred thousand dollars ($2,500,000) (the

---

[12] "Settlement Class Member" means a Person that is a member of the Settlement Class. 'Settlement Class Members' means all such Persons.  *Id*. ¶ 1.34.

[13] "Authorized Claimant" means a Settlement Class Member who submits a timely and valid Proof of Claim in accordance with the requirements established by the Court and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.  *Id*. ¶ 1.1.

[14] The "Net Settlement Fund" means the Settlement Fund less any Taxes and Tax Expenses, any Fee and Expense Award to Lead Counsel, any compensatory award to Plaintiff approved by the Court, and Notice and Administration Costs.  *Id*. ¶ 1.16.

[15] "Long Notice" means the Notice of Pendency and Proposed Settlement of Class Action.  *Id*. ¶ 1.15.

[16] "Proof of Claim" means the Proof of Claim and Release Form to be submitted by Claimants, substantially in the form attached as Exhibit A-2.  *Id*. at ¶ 1.24; Dkt. No. 36-2 (Proof of Claim and Release Form).

> "Settlement Fund") gross, plus interest as it accrues, minus
> attorneys' fees, costs, administrative expenses, and net of any taxes
> on interest, to pay claims of investors who purchased publicly-
> traded Blue Ridge common stock during the Class Period. [] The
> Settlement represents an estimated average recovery of $0.38 per
> share of publicly traded common stock for the 6.54 million shares
> of publicly-traded Blue Ridge common stock allegedly damaged
> during the Class Period.

Dkt. No. 36-2 at 2.

The Long Notice also contains information about: (1) the background of this case; (2) individuals included in the class; (3) the possible award to each class member; (4) each class member's options regarding the settlement, including objecting to it and opting out; (5) scheduling of the Settlement Fairness Hearing;[17] (6) and information about Class Counsel. *Id*. at 5-14.

Within 30 days of the Court's entry of the Proposed Order, Class Counsel "shall cause the Summary Notice to be published electronically once over a national newswire service." Dkt. No. 40-2. ¶ 15. Also within 30 days of the Court's entry of the Proposed Order,

> Class Counsel, through the Claims Administrator, shall: (a) email
> links to the location of the Long Notice and Proof of Claim to
> Settlement Class Members for whom the Claims Administrator is
> able to obtain email addresses; and (b) cause the Postcard Notice to
> be mailed, by first class mail, postage prepaid, to Settlement Class
> Members who can be identified with reasonable effort by Class
> Counsel, through the Claims Administrator.

*Id*. ¶ 16.

Class Counsel, through the Claims Administrator, must also

---

[17] "Settlement Fairness Hearing" means a hearing to be held before the Court to determine whether the proposed Settlement of the Action on the terms and conditions provided for in this Stipulation is fair, reasonable, and adequate to the Settlement Class and should be approved by the Court; to determine whether a Judgment as provided in the Stipulation should be entered; to determine whether the proposed Plan of Allocation should be approved; to determine any amount of fees, costs and expenses that should be awarded to Lead Counsel for their efforts and any compensatory award that should be awarded to Plaintiff for his service to the Settlement Class; to hear any objections by Settlement Class Members to the Stipulation, Plan of Allocation, or any award of fees and expenses to Lead Counsel or compensatory award to Plaintiff; and to consider such other matters as the Court may deem appropriate. Dkt. No. 36 ¶ 1.37.

> make all reasonable efforts to give notice to nominees or custodians who held publicly-traded Blue Ridge common stock as record owners but not as beneficial owners. Such nominees or custodians shall, within ten (10) calendar days of receipt of the notice, either: (i) request copies of the Postcard Notice sufficient to send the Postcard Notice to all beneficial owners for whom they are nominee or custodian, and request an electronic copy of the Summary Notice and either email the Summary Notice in electronic format or links to the Long Notice and Proof of Claim in addition to the Postcard Notice to each beneficial owner for whom they are nominee or custodian within ten (10) calendar days after receipt thereof; or (ii) provide the Claims Administrator with lists of the names, last known addresses and email addresses (to the extent known) of such beneficial owners, in which event the Claims Administrator shall promptly deliver the Summary Notice or a link to the Long Notice and Proof of Claim, if email addresses are available, and a Postcard Notice to such beneficial owners, if last known addresses are provided. If the Claims Administrator receives an email address, it will send a link to the Notice and Proof of Claim electronically.

*Id.* ¶ 17.

At least seven (7) calendar days before the Settlement Fairness Hearing, Class Counsel shall file and serve upon counsel for Defendants proof of the mailing and emailing of Notice, as required by the Proposed Order. *Id*. ¶ 18.

### iv.    Submission of Claims

Pursuant to the Settlement Agreement, Proof of Claim forms must be properly completed and submitted to the Claims Administrator, either electronically through the Claims Administrator's website before a date to be specified by the Court, or mailed to the address indicated in the Notice and postmarked no later than twenty-one (21) calendar days prior to the Settlement Fairness Hearing. *Id.* ¶ 20(a).  These deadlines may be extended by the Court. *Id.*

Each Proof of Claim is considered officially submitted when:

> i) the Claimant receives a confirmation notice from Strategic Claims Services for electronic submissions; or (ii) legibly postmarked (if properly addressed and mailed by first class mail) provided such Proof of Claim is actually received before the Settlement Fairness

Hearing. Any Proof of Claim Form submitted in any other manner shall be deemed to have been submitted when it was actually received by the Claims Administrator at the address designated in the Notice.

*Id*. With regard to each Proof of Claim submitted by each Settlement Class Member,

> (i) it must be properly completed, signed and submitted in a timely manner in accordance with the provisions of the preceding subparagraph; (ii) it must be accompanied by adequate supporting documentation for the transactions reported therein, in the form of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator or Class Counsel; (iii) if the person executing the Proof of Claim is acting in a representative capacity, a certification of his current authority to act on behalf of the Settlement Class Member must be provided with the Proof of Claim; and (iv) the Proof of Claim must be complete and contain no material deletions or modifications of any of the printed matter contained therein and must be signed under penalty of perjury.

*Id*. ¶ 20(b).

Once the Claims Administrator is in receipt of a timely submitted Proof of Claim,

> it shall determine whether such claim is valid, deficient or rejected. For each claim determined to be either deficient or rejected, the Claims Administrator shall send a deficiency letter or rejection letter as appropriate, describing the basis on which the claim was so determined. Persons who timely submit a Proof of Claim that is deficient or otherwise rejected shall be afforded a reasonable time (at least ten (10) calendar days) to cure such deficiency if it shall appear that such deficiency may be cured. If any Claimant whose claim has been rejected in whole or in part wishes to contest such rejection, the Claimant must, within ten (10) calendar days after the date of mailing of the notice, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's ground for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If an issue concerning a claim cannot be otherwise resolved, Class Counsel shall thereafter present the request for review to the Court.

*Id.* ¶ 20(c).  Additionally, "all Settlement Class Members who do not submit valid and timely Proofs of Claim will be forever barred from receiving any payments from the Net Settlement Fund, but will in all other respects be subject to and bound by the provisions of the Stipulation and the Order and Final Judgment,[18] if entered."  *Id.* ¶ 21.

### v.    Opting Out of the Settlement Agreement

As set forth in the Settlement Agreement, Settlement Class Members "shall be bound by all determinations and judgments in this Action whether favorable or unfavorable, unless such Persons request exclusion from the Settlement Class in a timely and proper manner, as provided in the Settlement Agreement.  *Id.* ¶ 22.  Settlement Class Members seeking to opt-out of the Settlement Agreement shall mail such request, "in written form, by first class mail, postage prepaid, or otherwise deliver it, so that it is received no later than" a date set by the Court, and in no case fewer than "twenty-one (21) calendar days prior to the Settlement Fairness Hearing[] (the 'Exclusion Deadline'), to the addresses listed in the Notice."  *Id*.  All opt-out requests must:

> (a) clearly indicate the name and address and phone number and e-mail contact information (if any) of the Person seeking exclusion, and state that the sender specifically "requests to be excluded from the Settlement Class in *Hunter v. Blue Ridge Bankshares, Inc., et al.*, Case No. 1:23-cv-08944-DG-JAM." [] (b) state the number of shares of publicly-traded Blue Ridge common stock the Person seeking exclusion (i) owned as of the opening of trading on February 2, 2023, and (ii) purchased and/or sold during the Settlement Class Period, including the number of shares, dates, and prices for each transaction, and the number of shares of Blue Ridge common stock held by the Person as of October 31, 2023; [] (c) be submitted with documentary proof: (i) of each purchase and, if applicable, sale transaction of publicly-traded Blue Ridge common stock during the Settlement Class Period and (ii) demonstrating the Person's status as a beneficial owner of those shares; and [] (d) be signed and submitted by the Claimant under penalty of perjury.

---

[18] "Judgment" means the Order and Final Judgment to be entered by the Court approving the Settlement, certifying the Settlement Class for settlement purposes only, approving the release of the Released Claims, and dismissing the Released Claims with prejudice and without costs to any party, substantially in the form attached hereto as [Dkt. No. 36-6] or in similar form adopted by the Court.  Dkt. No. 36 ¶ 1.13.

*Id.* ¶ 22(a)-(d).  Settlement Class Members who wish to revoke their prior request for exclusion can submit a written revocation of the exclusion to the Claims Administrator, which shall be effective so long as it is received no later than three days before the Settlement Fairness Hearing. *Id.* ¶ 25.

Class Members can also object to the settlement and any component thereof, including the Plan of Allocation,[19] or the Fee and Expense Application,[20]

> provided, however, that no Settlement Class Member or other Person shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement or, if approved, the Order and Final Judgment, or any other order relating thereto, unless that Person has served copies of any objections, papers and briefs such that it is received by [both Class Counsel and Defendants' counsel] at least twenty-one (21) calendar days prior to the Settlement Fairness Hearing Date [] and that Person has at least twenty-one (21) calendar days prior to the Settlement Fairness Hearing date filed said objections, papers and briefs, showing due proof of service upon counsel identified above, with the Clerk of the Court, U.S. District Court, Eastern District of New York, 225 Cadman Plaza East Brooklyn, NY 11201.

*Id.* ¶ 27 (emphasis in original).  Moreover, for such objections to be valid, they must:

> (1) state the Settlement Class Member's name, address, email address (if any), and telephone number; (2) state and include documentation of the number of shares of publicly-traded Blue Ridge common stock the Settlement Class Member (i) owned as of the opening of trading on February 3, 2023, and (ii) purchased and/or sold during the Settlement Class Period, including the number of shares, dates, and prices for each transaction; (3) state all grounds for the objection, including any legal support known to the

---

[19] "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund to Authorized Claimants, to be designed by Lead Counsel in its sole discretion, subject to the approval of the Court. Any Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.  Dkt. No. 36 ¶ 1.21.

[20] "Fee and Expense Application" shall mean an application or applications for payments from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including without limitation the fees and expenses of experts, consultants, and investigators incurred in connection with prosecuting the Action; and (c) a compensatory award for Plaintiff.  *Id.* ¶ 7.0.

Settlement Class Member and/or his, her, or its counsel; (4) state the name, address and telephone number of all counsel who represent the Settlement Class Member, including former or current counsel who may be entitled to compensation in connection with the objection; and (5) state the number of times the Settlement Class Member and/or his, her, or its counsel has filed an objection to a class action settlement in the last five years, the nature of each such objection in each case, the jurisdiction in each case, and the name of the issuer of the security or seller of the product or service at issue in each case.

*Id*. ¶ 27.

### vi.    Calculation of Settlement Awards and Distribution

Subject to the Court's direction and orders, "the Escrow Agent is authorized to execute such transactions on behalf of the Settlement Class as are consistent with the terms of this Stipulation." *Id*. ¶ 2.3. "The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Defendants' Counsel and Lead Counsel." *Id*.

The Claims Administrator shall have responsibility for administration and calculation of the claims submitted Settlement Class Members and shall oversee distribution of the Net Settlement Fund to Authorized Claimants, the payments of which will be drawn from the Net Settlement Fund. Dkt. No. 36 ¶ 6.0. The Settlement fund will be paid out as follows: "to pay Taxes and Tax Expenses;[21] to pay Notice and Administration Costs; to pay a Fee and Expense Award[22] to Lead Counsel to the extent allowed by the Court; to pay a compensatory award to

---

[21] "Taxes" and "Tax Expenses" means: (i) all federal, state, and/or local taxes of any kind on any income earned by the Settlement Fund, together with any interest, penalties, or additions to tax imposed with respect to them; and (ii) the reasonable and necessary costs and expenses incurred in connection with the implementation of § II.C(e).2.8 of the Stipulation, including, without limitation, the reasonable and necessary costs and expenses of tax attorneys and accountants. Dkt. No 36 ¶ 1.40.

[22] "Fee and Expense Award" shall mean "[a]ny award of attorneys' fees, costs, and expenses approved by the Court[.]" *Id*. ¶ 7.1.

Plaintiff to the extent allowed by the Court; and, upon court approval, to distribute the Net Settlement Fund to the Authorized Claimants as allowed by this Stipulation and the Plan of Allocation." *Id.* ¶ 6.2.

The Settlement Agreement's proposed Plan of Allocation entails the following:

> The Claims Administrator shall determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Loss.[23] **Please Note**: The Recognized Loss formula, set forth below, is not intended to be an estimate of the amount of what a Settlement Class Member might have been able to recover after a trial, nor is it an estimate of the amount that will be paid to Authorized Claimants pursuant to the Settlement. The Recognized Loss formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. To the extent there are sufficient funds in the Net Settlement Fund, each Authorized Claimant will receive an amount equal to the Authorized Claimant's Recognized Loss and subject to the provisions in the preceding paragraph. If, however, the amount in the Net Settlement Fund is not sufficient to permit payment of the total Recognized Loss of each Authorized Claimant, then each Authorized Claimant shall be paid the percentage of the Net Settlement Fund that each Authorized Claimant's Recognized Loss bears to the total Recognized Losses of all Authorized Claimants and subject to the provisions in the preceding paragraph (*i.e.*, "*pro rata* share"). Claimants who would otherwise receive a potential distribution of less than $10.00 in cash shall instead receive a distribution of $10.00.

Dkt. No. 36-2 at 8 (emphasis in original). Moreover, the Plan of Allocation states:

> If any funds remain in the Net Settlement Fund by reason of uncashed checks, or otherwise, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, then any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be used: (i) first, to pay any amounts mistakenly omitted from the initial distribution to Authorized Claimants; (ii) second, to pay any additional Notice and Administration Costs incurred in administering the Settlement; and (iii) finally, to make a second distribution to Authorized Claimants

---

[23] The "The Recognized Loss" formula is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants. Dkt. No. 36-2 at 7.

who cashed their checks from the initial distribution and who would receive at least $10.00 from such second distribution, after payment of the estimated costs or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. If six (6) months after such second distribution, if undertaken, or if such second distribution is not undertaken, any funds shall remain in the Net Settlement Fund after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants who are entitled to participate in this Settlement cash their checks, any funds remaining in the Net Settlement Fund shall be donated to the Howard University Investor Justice & Education Clinic.

*Id.* at 8.

With regard to calculation of a Class Member's Recognized Loss, the Plan of Allocation states,

[] For shares purchased during the Settlement Class Period and sold during the Settlement Class Period, the Recognized Loss per share will be the inflation per share upon purchase (as set forth in Inflation Table A below) less the inflation per share upon sale (as set forth in Inflation Table A below). [] For shares purchased during the Settlement Class Period and retained as of the close of trading on October 31, 2021, the Recognized Loss will be the inflation per share upon purchase (as set forth in Inflation Table A below).

| INFLATION TABLE A | |
|---|---|
| Common Stock Purchased During the Settlement Class Period | |
| **Period** | **Inflation** |
| February 3, 2023 to April 27, 2023, inclusive | $3.23 per share |
| April 28, 2023 to April 30, 2023, inclusive | $2.90 per share |
| May 1, 2023 to July 30, 2023, inclusive | $2.26 per share |
| July 31, 2023 | $1.47 per share |
| August 1, 2023 to October 31, 2023 | $1.06 per share |
| After October 31, 2023 | $0.00 per share |

*Id.* at 8-9. The average approximate recovery, after deduction of attorneys' fees, expenses, and the award to Hunter approved by the Court, is $0.24 per share. *See id.* at 3.

### vii.    Service Awards and Fees

The Settlement Agreement states that Class Counsel "may submit an application or applications [] for payments from the Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including without limitation the fees and expenses of experts, consultants, and investigators incurred in connection with prosecuting the Action; and (c) a compensatory award for [Hunter,]" pursuant to 15 U.S.C. § 78u-4(a)(4), of no more than $3,500.00.  Dkt. Nos. 36 ¶ 7.0, 40-4 at 2-3.  Moreover, Class Counsel can apply to the Court for further fees and expenses incurred, if necessary.  Dkt. No. 36. ¶ 7.0.

The Fee and Expense Application can include attorneys' fees of up to one-third of the Settlement Amount (not to exceed $833,333.33), in addition to reimbursement of actual costs and expenses of no greater than $80,000.00.  *See* Dkt. Nos. 36 ¶ 7.0; 36-2 at 2, ¶ 14.  Should the Fee and Expense Award be "reduced or reversed on appeal, Lead Counsel shall make all necessary refunds and repayments into the Settlement Fund no later than thirty (30) calendar days after Lead Counsel's receipt from the Court of notice of any order that reverses or reduces any award of attorneys' fees or expenses, which shall be distributed by the Escrow Agent to the Settlement Class pursuant to the manner directed in the Final order."  Dkt. No. 36 ¶ 7.2.  The Settlement Agreement memorializes that "whatever amount [of the Fee and Expense Application] is awarded by the Court is within the sole discretion of the Court, and if the award is less than the amount sought, it will not be a basis for setting aside the Settlement [Agreement]."  *Id.* ¶ 7.3.

### viii.    Releases

Upon occurrence of the conditions of the Effective Date of the Settlement Agreement,

> all Settlement Class Members (whether or not they submit a Proof
> of Claim or share in the Settlement Fund), and all other Released

>Plaintiff Parties,[24] on behalf of themselves and anyone claiming through or on behalf of any of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and every one of the Settlement Class Claims, and shall be deemed by this Settlement to, and shall be forever barred and enjoined from commencing, instituting, assisting, prosecuting, or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, administrative forum, or any other forum, asserting any of the Settlement Class Claims.

*Id.* ¶ 5.1.  Further,

>Upon the Effective Date of this Settlement, and as a material condition of the dismissal with prejudice of the Action, Defendants and all of the other Released Defendant Parties,[25] on behalf of themselves and anyone claiming through or on behalf of any of them, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged each and every one of the Defendant Claims,[26] and shall be deemed by this Settlement to, and shall be forever enjoined from prosecuting each and every one of the Defendant Claims.

---

[24] "Released Plaintiff Parties" means each and every Settlement Class Member, Plaintiff, Lead Counsel, the Claims Administrator, and each of their respective past or present trustees, officers, directors, partners, employees, affiliates, contractors, principals, agents, attorneys, predecessors, successors, assigns, insurers, parents, subsidiaries, general or limited partners or partnerships, and limited liability companies; and the spouses, members of the immediate families, representatives, and heirs of any Released Plaintiff Party who is an individual, as well as any trust of which any Released Plaintiff Party is the settlor or which is for the benefit of any of their immediate family members. "Released Plaintiff Parties" do not include Persons who or which timely and validly submit a request for exclusion from the Settlement Class or whose exclusion from the Settlement Class is accepted by the Court.  Dkt. No. 36 ¶ 1.28.

[25] "Released Defendant Parties" means Defendants, Defendants' Counsel, and each of their respective past, present, or future direct or indirect subsidiaries, parents, affiliates, principals, joint ventures, any other corporate entities, successors and predecessors, assigns, officers, directors, shareholders, controlling shareholders, members, trustees, partners, agents, fiduciaries, contractors, employees, attorneys, insurers and reinsurers, auditors, advisors, financial advisors, investment banks, underwriters, investors, accountants; the spouses, members of the families, representatives, and heirs of Defendants who are individuals, as well as any trust of which any Defendant is the settlor or which is for the benefit of any of their immediate family members; any firm, trust, corporation, or entity in which any Defendant has a controlling interest; and any of the legal representatives, heirs, successors in interest or assigns of Defendants.  *Id*. ¶ 1.26.

[26] "Defendant Claims" means any and all counterclaims and bases for relief, whether known or Unknown Claims, that the Released Defendant Parties could have raised in the Action against any Released Plaintiff Party, whether arising under state, federal, common, or foreign law, which arise out of or are related to the commencement and prosecution of the Action (except for claims to enforce the Settlement), including claims for violations of Fed. R. Civ. P. 11 or any other fee or cost-shifting claim.  *Id*. ¶ 1.5.

*Id.* ¶ 5.2. The parties add:

> [Hunter], Defendants and Settlement Class Members may hereafter
> discover facts in addition to or different from those which he, she,
> or it now knows or believes to be true with respect to the subject
> matter of the Released Claims, but [Hunter] shall expressly, fully,
> finally, and forever settle and release, and each Settlement Class
> Member and other Released Plaintiff Party, upon the Effective Date,
> shall be deemed to have, and by operation of the Judgment shall
> have, fully, finally, and forever settled and released, and the
> Released Defendant Parties shall expressly, fully, finally, and
> forever settle and release any and all Settlement Class Claims and
> Defendant Claims as applicable, in each case known or unknown,
> suspected or unsuspected, contingent or non-contingent, disclosed
> or undisclosed, matured or unmatured, whether or not concealed or
> hidden, which now exist, or heretofore have existed, upon any
> theory of law or equity now existing or coming into existence in the
> future, including, but not limited to, conduct which is negligent,
> intentional, with or without malice, or a breach of any duty, law or
> rule, without regard to the subsequent discovery or existence of such
> different or additional facts.

*Id.*

The parties also agree that the Court will retain jurisdiction over this matter, including the

administration and consummation of the Settlement. *Id.* ¶ 9.5.

### ix.    Proposed Schedule

The parties also propose the following schedule for implementation of the Settlement

Agreement:

| Event | Deadline for Compliance |
|---|---|
| Creating Settlement Website | No later than 40 calendar days after the entry of the Preliminary Approval Order |
| Emailing Links to the Long Notice and Claim Form, and/or Mailing Postcard Notice | No later than 40 calendar days after the entry of the Preliminary Approval Order |
| Publication of the Summary Notice | No later than 40 calendar days after entry of the Preliminary Approval Order |
| Date for Hunter to file papers in support of the Settlement, the Plan, and for Application of attorneys' fees and expenses | No later than 35 calendar days before the Settlement Hearing |
| Submission Deadline for Claim Forms | No later than 28 calendar days before the Settlement Hearing |

| Submission Deadline for Requests for Exclusion | No later than 28 calendar days before the Settlement Hearing |
| Submission Deadline for Objections | No later than 28 calendar days before the Settlement Hearing |
| Date for Hunter to file Reply Papers in Support of the Settlement, the Plan, and for Application of Attorneys' Fees and Expenses | No later than 7 calendar days before the Settlement Hearing |
| Date for the Settlement Hearing | Approximately 100 days after entry of the Preliminary Approval Order |

Dkt. No. 34 at 20.

## II.   <u>Discussion</u>

Hunter, on behalf of the parties, requests that the Court "enter an order: (a) preliminarily certifying the Settlement Class; (b) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (c) approving the form and method for providing notice of the Settlement; and (d) setting the Settlement Hearing." *Id.* at 28.

Pursuant to Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class — or a class proposed to be certified for purposes of settlement — may be settled, voluntarily dismissed, or compromised only with the court's approval." *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2023 WL 4621716, at *4 (E.D.N.Y. July 19, 2023) (citing Fed. R. Civ. P. 23(e)). A court may approve a proposed settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023).

A class action settlement typically occurs in two stages: (1) the preliminary approval stage, where "prior to notice to the class a court makes a preliminary evaluation of fairness," and (2) the final approval stage, where "notice of a hearing is given to the class members, [and] class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11,

27 (E.D.N.Y. 2019) (alteration in original) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 11-CV-5450 (NRB), 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016)).

During the preliminary approval stage, courts evaluate whether they "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *Payment Card*, 330 F.R.D. at 28). "If the court determines that notice to class members is 'justified by the parties' showing'" as to the likelihood of final approval and class certification, "it 'must direct notice in a reasonable manner to all class members who [would] be bound by the proposal.'" *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *4 (citing *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021); Fed. R. Civ. P. 23(e)(1)(B)).

Public policy and the courts strongly favor settlement of class actions and complex litigation. *See Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y. 2009). Nonetheless, "the Court's role . . . 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'" *GSE*, 414 F. Supp. 3d at 692 (quoting *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d 297, 308 (W.D.N.Y. 2016)).

### A. Likelihood of Final Settlement Approval

### i. Legal Standard

In assessing the likelihood of granting final approval to a class action settlement, courts "look[] to the factors contained in the text of Rule 23(e)(2)." *Payment Card*, 330 F.R.D. at 28. Rule 23(e)(2) compels courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[P]aragraphs (A) and (B) are 'procedural' factors that address 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,' whereas . . . paragraphs (C) and (D) are 'substantive' factors that address the 'relief that the settlement is expected to provide to class members.'" *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *4 (quoting *Rosenfeld*, 2021 WL 508339, at *3); *see also* Fed. R. Civ. P. 23 Advisory Committee Note to 2018 Amendment.

The "substantive factors" in paragraphs (C) and (D) are supplemented and often overlapped by the nine factors enumerated in *City of Detroit v. Grinnell Corp.*, which "courts in this Circuit have traditionally considered" when "evaluating the fairness, reasonableness, and adequacy of the proposed settlement." *Rosenfeld*, 2021 WL 508339, at *3 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). The *Grinnell* factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Moses*, 79 F.4th at 244 at n.4 (quoting *Grinnell*, 495 F.2d at 463).

"[T]he rule now requires courts to expressly consider two core factors when reviewing the substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Id.* at 244; Fed. R. Civ. P. 23(e)(2)(C)-(D).

### ii.    Procedural Factors

### a.    Adequate Representation

To determine the adequacy of class representatives and counsel, courts evaluate "whether (1) plaintiff[s'] interests are antagonistic to the interests of other members of the class and (2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation." *In re 3D Sys. Sec. Litig*, 2023 WL 4621716, at *5 (quoting *Rosenfeld*, 2021 WL 508339, at *4).  A class representative "must be part of the class and possess the same interest and suffer the same injury as the [other] class members." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Payment Card*, 330 F.R.D. at 31 (explaining that the Due Process Clause requires adequate representation).  Courts reviewing proposed settlements must also scrutinize the negotiating process, to ensure they resulted from "arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (citing *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982)).

Here, and as the Court has already determined, the record is clear that Hunter's interests align with those of the proposed class and that he is adequate as a class representative.  *See* Dkt. No. 16 at 11 ("[A]s Plaintiffs contend, "[Hunter's] interests are closely aligned with the other Class members' and [Hunter's] interests are, therefore, typical of the other members of the Class.").  Indeed, like the other members of the proposed class, Hunter purchased Blue Ridge stock during

the Settlement Class Period at artificially inflated prices.  *See* Dkt. No. 34 at 14.  Hunter's desire

to maximize his recovery is aligned with that of other members of the class.  *See In re Polaroid*

*ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the

common goal of maximizing recovery, there is no conflict of interest . . . .").  Hunter has also been

involved in this litigation from the beginning, having filed the complaint and moved to be

appointed lead plaintiff, which motion was granted.  *See* Dkt. Nos. 10, 16, 34 at 13-14.

Additionally, as this Court has previously held, "there is no doubt that The Rosen Law Firm

is qualified, experienced, and generally able to conduct the proposed litigation."  Dkt. No. 16 at

12.  To consider adequacy of class counsel, Courts evaluate: (1) the work counsel has done in

identifying or investigating potential claims in the action; (2) counsel's experience in handling

class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's

knowledge of the applicable law; and (4) the resources counsel will commit to representing the

class.  *See Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005).

And as the record shows, Class Counsel has spent considerable time on this matter for the

benefit of Hunter and the class, including having conducted a comprehensive investigation that

entailed interviewing former Blue Ridge employees and scrutinizing public filings and other

records.  *See* Dkt. Nos. 34 at 14, 35 ¶¶ 2-5.  Additionally, Class Counsel has extensive experience

in litigating other securities class actions, is well-versed in securities law, and appears to have the

resources to continue representing the class.  *See, e.g.*, *Sanchez v. Arrival SA*, No. 22-CV-172 (DG),

2022 WL 20539729, at *1 (E.D.N.Y. Apr. 15, 2022) (appointing The Rosen Law Firm as Class

Counsel); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 439-40 (S.D.N.Y. 2008) ("the Rosen Law

Firm is well-qualified to serve as Class Counsel in this matter") (Sullivan, J.); *Mikhlin v. Oasmia*

*Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021)

(Rosen Law is "capable and experienced in class litigation"); *In re 3D Sys. Sec. Litig.*, 2024 WL 50909, at *8 (E.D.N.Y. Jan. 4, 2024) (in assessing adequacy of representation, stating "[Rosen Law has] substantial experience in securities class actions.").

### b.    Arm's-Length Negotiations

The record is clear that this Settlement was the product of arm's-length negotiations by informed, experienced counsel. *See D'Amato*, 236 F.3d at 85 (citing *Weinberger*, 698 F.2d at 74). While the Second Circuit held in *Moses* that arm's-length-negotiated settlements are no longer entitled to a presumption of fairness, such circumstances support approval of settlements. *See Moses*, 79 F.4th at 243. Moreover, involvement of a mediator during the settlement negotiation process weighs in favor of a finding of fairness because it "helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85; *In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]hat the Settlement was reached . . . with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable.").

The parties participated an in-person, full-day mediation before David Geronemus, Esq. on December 5, 2024, and, according to Hunter, the negotiations were "hard-fought." *See* Dkt. No. 36 at 2. Other courts in this Circuit have preliminarily approved class action settlements reached after mediation before Mr. Geronemus. *See In re Penthouse Exec. Club Comp. Litig.*, No. 10-CV-1145 (KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) (noting "[t]he assistance of [] David Geronemus of JAMS [] reinforces that the Settlement Agreement is non-collusive" and that "[a] settlement like this one, reached with the help of third-party neutrals enjoys a 'presumption that the settlement achieved meets the requirements of due process.'") (quoting *Johnson v. Brennan,* No. 10-CV-4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)).

### iii.       Substantive Factors

#### a.       Adequate Relief

##### 1.       The Costs, Risks, and Delay of Trial and Appeal

"The first factor in assessing whether the proposed settlement provides adequate relief for the putative class is an evaluation of the 'costs, risks, and delay of trial and appeal.'" *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *6 (quoting Fed. R. Civ. P. 23(e)(2)(C)(i)). This first factor encompasses several *Grinnell* factors, "including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial" (*Grinnell* factors 1, 4, 5, and 6). *Id.* (quoting *Rosenfeld*, 2021 WL 508339, at *5). In sum, a court must ascertain "whether the proposed settlement 'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Id.* (quoting *Rosenfeld*, 2021 WL 508339, at *5); *Payment Card*, 330 F.R.D. at 36.

Here, the Settlement Agreement contemplates a $2.5 million payment to the class, out of an alleged $9.64[27] million in potential damages, amounting to a recovery rate of approximately 26%. *See* Dkt. No. 34 at 20. Hunter contends, citing a report by analyst firm Cornerstone Research, that "settlements in cases with maximum estimated damages under $25,000,000 [had a] median recovery in 2023 [of] 15.2% and [] 18.8% for 2014 to 2022. *See* Dkt. Nos. 34 at 20, 35-2 at 10. Accordingly, the recovery of approximately 26% of total maximum potential damages exceeds the Cornerstone average, which supports a finding that the settlement amount provides adequate relief. *See In re N. Dynasty Mins. Ltd. Sec. Litig.*, No. 20-CV-5917 (TAM), 2024 WL

---

[27] Defendants dispute the maximum damages calculation of $9.64 million by Plaintiff's expert and posit that "a 'complete and total victory' on liability and loss causation for all of the alleged false statements 'occurs with the regularity of unicorn sightings.'" Dkt. No. 34 at 20 n.3 (quoting *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. 13-CV-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017)).

308242, at *13 n.11 (E.D.N.Y. Jan. 26, 2024) (concluding a class action settlement amount was "within a reasonable range" and comparing findings of Cornerstone Research report).

### 2.    The Anticipated Complexity and Expense of this Litigation

This Court, alongside others in this Circuit, have noted that "[c]lass action suits 'have a well-deserved reputation as being most complex," *Payment Card*, 330 F.R.D. at 36, and securities class actions are 'notably difficult and notoriously uncertain to litigate,'" *Mikhlin*, 2021 WL 1259559, at *5 (quoting *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 409 (S.D.N.Y. 2018)).  The enaction of the Private Securities Litigation Reform Act ("PSLRA") has arguably exacerbated this issue.  *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER) 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("securities actions have become more difficult from a plaintiff's perspective in the wake of the [PSLRA].").

Hunter contends that the Settlement Agreement allows the parties to avoid the uncertainty associated with litigating this case, including "satisfying the heightened pleading requirements of the PSLRA, to proving market efficiency and defeating the defendants' attempts to prove their false statements did not have price impact, to surviving a motion for summary judgment, to proving at trial every element of Plaintiff's claims and theories and calculation of damages . . . ."  Dkt. No. 34 at 20.  Additionally, Hunter estimates that, in light of its complexity, "the action could take as much as a decade more to resolve[,]" and could cost as much as a $1 million to litigate through extensive fact and expert discovery, class certification, summary judgment, and trial.  *Id*.

In consideration of the record and the parties' assertions, the undersigned concurs that the costs, risks, and likely duration of continuing to litigate this matter are significant and that the tangible present recovery of the settlement weigh in favor of preliminary approval of the proposed settlement.

### 3.    The Proposed Method of Distributing Relief

The Court must also consider the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *7 (quoting Fed. R. Civ. P. 23(e)(2)(C)(ii)).  However, "[a]n allocation formula need only have a reasonable, rational basis" and "need not be perfect." *Id.* (citing *Payment Card*, 330 F.R.D. at 40).  With regard to the processing of claims, any proposed method should seek to deter meritless or unjustified claims without imposing an undue burden on class members.  *See Rosenfeld*, 2021 WL 508339, at *6 (citing Fed. R. Civ. P. 23 Advisory Committee Note to 2018 Amendment).

Here, Hunter submits a Plan of Allocation governing how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants. *See* Dkt. No. 36-2.  The Plan of Allocation details how Class Members' claims will be calculated, including based on the number of shares they possessed and when they purchased and sold their shares.  *Id*. at 7.  Moreover, the Claims administrator will determine each Class Member's *pro rata* share of the Net Settlement Fund based upon such Class Member's Recognized Loss.  *Id*.  Further, Class Members who would otherwise receive a potential distribution of less than $10.00 in cash will instead receive a distribution of $10.00.  *Id*.  Additionally, the Plan of Allocation seems likely to filter out unmeritorious claims while preserving resources for Class Members.

Accordingly, the undersigned finds the proposed method of processing claims to be fair and rational, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *7 (quoting *Rosenfeld*, 2021 WL 508339, at *6).

#### 4.    Attorneys' Fees and Reimbursement of Expenses

The Court must also consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C) (iii). Here, and as stated in the proposed Notice, Plaintiffs' counsel "intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount and recover litigation expenses in an amount not to exceed $80,000." Dkt. No. 34 at 22. Moreover, as further stated in the proposed Notice, Hunter intends to request a service award not to exceed $3,500, pursuant to 15 U.S.C. § 78u-4(a)(4), in connection with his representation and labor on behalf of the Settlement Class. *Id*. at 23.

"Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness" — particularly "in cases with funds of less than $10 million." *Rosenfeld*, 2021 WL 508339, at *6 (quotation marks omitted). Assuming Class Counsel's application for attorneys' fees and litigation expenses is well-documented and properly substantiates such requests, it is likely to be granted, so long as the request are reasonable in nature. Indeed, "it is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2013). Courts in this Circuit regularly hold requests for attorneys' fees totaling one-third of the settlement fund "well within the range of reasonableness." *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 15-CV-441 (MAD), 2016 WL 3406111, at *9 (N.D.N.Y. June 17, 2016); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013); *Willix v. Healthfirst, Inc.*, No. 07-CV-1143, 2011 WL 754862 (RER), at *6-7 (E.D.N.Y. Feb. 18, 2011).

Furthermore, upon review Class Counsel's Fee and Expense Application, "should the court find that a fee award of 33% is not justified in this case, it has the discretion to award a lower

amount." *Rosenfeld*, 2021 WL 508339, at *7; *see* Dkt. No. 36-2 at 3 ("The Court will review the application for attorneys' fees, expenses, and award to Plaintiff at the Settlement Fairness Hearing and determine the amounts that are reasonable and appropriate."). This further weighs in favor of finding the proposed fees and expenses reasonable at the current preliminary approval stage.

### 5.    Other Agreements

In evaluating whether the proposed agreement affords class members adequate relief, the court must consider any other agreements "required to be identified under Rule 23(e)(3)." *Rosenfeld*, 2021 WL 508339, at *7. Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the Parties. Fed. R. Civ. P. 23(e)(2)(C)(iv). The impetus behind this disclosure requirement is to reveal "undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," to wit, Hunter or Class Counsel. *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *8 (citing Fed. R. Civ. P. 23 Advisory Committee Note to 2003 Amendment).

Here, the Parties have a supplemental agreement which provides that if Settlement Class Members opt out of the Settlement at such a rate that the number of shares of Blue Ridge common stock represented by the opt outs equals or exceeds a certain number, Blue Ridge may terminate the Settlement. Dkt. Nos. 34 at 23, 36 ¶ 2.12. The parties do not publicly disclose the confidential terms of the agreement, "to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement." Dkt. No. 34 at 23.

At the preliminary approval hearing before the undersigned on June 6, 2025, the Parties were directed to file this supplementary agreement under seal, which they did. *See* Dkt. No. 39-7.

Having reviewed the parties' submission, the undersigned finds that Hunter has accurately described the terms of the supplemental agreement in the Motion. The Court further notes that

supplemental agreements of this nature are "standard in securities class action settlements." *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *8 (quoting *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019)). Moreover, "[g]iven the specific function of this separate agreement, it does not appear to bear upon the overall fairness of the settlement agreement itself." *Id*. (quoting *In re PPDAI Grp. Inc. Secs. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *13 (E.D.N.Y. Jan. 21, 2022)). Thus, the undersigned finds that the supplemental opt-out agreement is not likely to preclude final approval of the Settlement.

**b.    Equitable Treatment**

To be subject to approval, proposed class action settlements must "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). To evaluate this, courts consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Rosenfeld*, 2021 WL 508339, at *7 (quoting Fed. R. Civ. P. 23 Advisory Committee Note to 2018 Amendment).

As noted *supra*, pursuant to the Parties' proposed Plan of Allocation, settlement funds are to be distributed ratably. Therefore, "[i]n this way, the agreement appropriately and fairly accounts for . . . point[s] of differentiation among class members' claims." *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *8 (quoting *Rosenfeld*, 2021 WL 508339, at *7).

Additionally, as noted *supra*, Hunter may seek a service award not to exceed $3,500.00. Dkt. No. 34 at 23. "Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957, at *3 (E.D.N.Y. Mar, 31, 2014) (quotation marks omitted). A court will examine a class plaintiff's relationship to the class action to determine whether "special

circumstances" exist justifying a service award, including, *inter alia*, time and effort expended, and any other burden sustained by the class plaintiff. *See In re AOL Time Warner ERISA Litig.*, No. 02–CV–8853 (SWK), 2007 WL 3145111, at *2 (S.D.N.Y. Oct.26, 2007).

Assuming Hunter can demonstrate such "special circumstances," the settlement agreement's provision granting him a service award of up to $3,500.00 is not likely to preclude its final approval. *See In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *8 (citing *Torres*, 2014 WL 1330957, at *3).

### c.    Stage of Proceedings and Discovery Completed (*Grinnell* #3)

The third *Grinnell* factor compels the Court to evaluate whether the parties have sufficient information regarding their claims to ensure the fairness of their settlement. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 198 (S.D.N.Y. 2012). "To approve a proposed settlement," however, "the Court need not find that the parties have engaged in extensive discovery." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement . . . the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make . . . an appraisal of the Settlement.") (quotation marks and citations omitted). Courts must find that the parties sufficiently investigated their claims to hold that a settlement agreement is fair and reasonable. *See Bank Holocaust Litig.*, 80 F. Supp. 2d at 176.

Here, while no discovery has been taken by the parties, Hunter's investigation into his claim compels a finding that the parties possess the information necessary to negotiate a well-informed, and ultimately fair and reasonable settlement. Hunter's investigation, which included

interviewing former employees of defendant, and "scouring public records" enabled Hunter and Class Counsel to enter into the settlement agreement informed about this lawsuit's strengths and weaknesses.  *See* Dkt. Nos. 34 at 24-25, 25 ¶¶ 2-5.

### d.    Defendants' Ability to Withstand Greater Judgment (*Grinnell* #7)

"Under the *Grinnell* analysis, the [C]ourt also considers Defendants' ability to withstand a greater judgment than that provided for in the proposed settlement."  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *9 (quoting *Rosenfeld*, 2021 WL 508339, at *7).  But "the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"  *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).  Indeed, a "defendant is not required to 'empty its coffers' before a settlement can be found adequate."  *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 191 (S.D.N.Y. 2012) (quoting *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-CV-5173 (RPP), 2008 WL 1956267, at *8 (S.D.N.Y. May 1, 2008).

At the preliminary approval meeting before the undersigned on June 6, 2025, the Parties were directed to supplement their submission with evidence of Defendants' ability to withstand a greater judgment, which they subsequently did.  *See* Dkt. No. 40 at 2.  Having reviewed this submission, the undersigned finds that, while Defendants could withstand a greater judgment, and even one for the maximum estimated damages of over $9 million, *see id.*, the Settlement Agreement is fair and reasonable.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *19 (S.D.N.Y. Nov. 8, 2010) ("[T]he mere ability to withstand a greater judgment does not suggest the settlement is unfair.").

### e.    Range of Reasonableness of Settlement Fund (*Grinnell* #8 and #9)

Next, the Court considers "the range of reasonableness of the settlement fund in light of [both] the best possible recovery" and "the attendant risks of litigation." *Charron*, 731 F.3d at 247 (2d Cir. 2013); *see Payment Card*, 330 F.R.D. at 48 (noting that *Grinnell* factors eight and nine "are often combined for the purposes of analysis").  The inquiry into whether the Settlement falls within the "range of reasonableness . . . recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

As described above, the settlement recovers $2.5 million out of an alleged $9.64 million in total potential damages, amounting to a recovery rate of approximately 26%.  *See* Dkt. No. 34 at 20.  Also as noted above, this amounts to a greater recovery than average for securities class action settlements.  *See* Dkt. Nos. 34 at 20, 35-2 at 10.  In light of the risks noted by Hunter and described above, including the Court possible granting of Defendants' motion to dismiss, Hunter's possible failure to obtain class certification, and the exacting legal standards under the PSLRA, the undersigned respectfully recommends that the Parties' $2.5 million settlement amount falls within a reasonable range

In sum, in light of the above, the undersigned finds that Rule 23's procedural and substantive requirements, as well as those enumerated in *Grinnell*, are met and that the Settlement is fair and reasonable.

### B.    Likelihood of Class Certification

### i.    Requirements of Rule 23(a)

### a.    Legal Standard

"In order to conclude that giving notice to the putative class is justified, the court must also determine that it will likely be able to certify the class for purposes of judgment on the proposal" under Fed. R. Civ. P. 23(a) and (b).  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *10 (citing *Rosenfeld*, 2021 WL 508339, at *8).  The party seeking class certification must "affirmatively demonstrate" compliance with these rules.  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012).  While a settlement class must comply with the majority of Rule 23's strictures, management issues are of less import to the certification of a settlement class. *See Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997).  To preliminarily certify a settlement class, the requirements of Rule 23(a) and 23(b)(3) must be met, including numerosity, commonality, typicality, adequacy of representation, and predominance and superiority.  *Id*. at 613.  Moreover, "[i]n addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of ascertainability."  *Payment Card*, 330 F.R.D. at 50.

Here, the putative class seeks preliminary certification of a settlement class under Rule 23(b)(3), requiring "both that (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *10 (quoting *Payment Card*, 330 F.R.D. at 54; Fed. R. Civ. P. 23(b)(3))).

**b.    Numerosity**

Rule 23 requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is generally presumed at a level of 40 [or more] members." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 263 n.20 (2d Cir. 2021) (citation & quotations omitted); *see Capobianco v. City of New York*, 21 CIV. 6125 (LDH) (VMS), 2023 WL 12032097, at *4 (E.D.N.Y. Aug. 25, 2023). Hunter "must show some evidence of or reasonably estimate the number of class members." *Zhu v. Wanrong Trading Corp.*, 18-CV-417 (ENV) (MMH), 2024 WL 4351357, at *4 (E.D.N.Y. Sept. 30, 2024) (quoting *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015)).

Here, Hunter states that "there are hundreds if not thousands of potential Settlement Class Members as Blue Ridge common stock publicly traded on the New York Stock Exchange AMEX during the Settlement Class Period." Dkt. No. 34 at 11. While Hunter does not currently know the exact size of the Settlement Class, numerosity is typically satisfied in securities class actions because "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-CV-10240 (CM), 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007) (numerosity generally met with nationally traded securities).

Thus, in light of the "large number of impacted shares and possible class members, numerosity can be presumed in this case." *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *11; *see also Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2022 WL 950953, at *4 (S.D.N.Y. Mar, 29, 2022) ("[A]n estimate of thousands of class members is sufficient to satisfy the numerosity requirement." (quotation marks omitted)).

### c.    Commonality

Under Rule 23, it must be shown that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Even a single common question is enough." *Schutter*, 2024 WL 4118465, at 4 (quoting *Wal-Mart Stores*, 564 U.S at 359); *see McLaughlin v. IDT Energy*, 14-CV-4107 (ENV) (RML), 2018 WL 3642627, at *7 (E.D.N.Y. July 30, 2018) ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . . Their claims must depend on a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.") (quoting *Wal-Mart Stores*, 564 U.S. at 349–50). The commonality requirement "is applied permissively." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004).

Here, common issues include whether Defendants made materially false statements or omissions with the requisite scienter, whether this precipitated any damages suffered by the Settlement Class, and the proper measure thereof. *See* Dkt. No. 34 at 12. The commonality requirement is satisfied here in light of Hunter's assertions that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012); *see also In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015).

### d.    Typicality

Rule 23 also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality requires that the claims or defenses of the class representatives be typical of the claims or defenses of the class members," and "[t]his requirement is satisfied when each class member's claim arises from the same course

of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010).

Courts often find typicality exists in securities cases where all class members were allegedly harmed by "the distribution of false and misleading information which artificially inflated the stock." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002). The requirement of typicality "is usually met" where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *11 (quoting *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993)). "In securities actions, in particular, typicality is 'not demanding.'" *Id.* (quoting *In re Deutsche Bank*, 328 F.R.D. at 80). Here, such allegedly unlawful conduct is undoubtedly directed at Hunter as well as the class sought to be represented.

Accordingly, the undersigned respectfully recommends a finding that the putative class has met the requirement of typicality.

### e.   **Adequate Representation**

To satisfy the adequacy requirement, "[p]laintiffs must meet two standards — that 'class counsel . . . be qualified, experienced[,] and generally able to conduct the litigation,' and that 'the class members . . . not have interests that are antagonistic to one another.'" *Id.* (quoting *Balestra*, 2022 WL 950953, at *4. As noted *supra*, this Court has previously determined Hunter and Class Counsel to be adequate within the context of Rule 23(e)(2). *See* Dkt. No. 16. The undersigned accordingly finds that Hunter and Class Counsel adequately represent the proposed class, and that the adequacy requirement will likely be found during final settlement approval.

### f.    Ascertainability

Rule 23's implied ascertainability requirement "requires only that a class be defined using objective criteria that establish a membership with definite boundaries."  *In re Petrobras Sec.*, 862 F.3d 250, 264 (2d Cir. 2017); *see Brecher v. Republic of Argentina*, 806 F.3d 22, 24-25 (2d Cir. 2015) ("A class is ascertainable when defined by objective criteria . . . and when identifying its members would not require a mini-hearing on the merits of each case.").  "The Second Circuit has observed that defining a class based on 'securities purchases identified by subject matter, timing, and location' is both a 'clearly objective' means of doing so and 'sufficiently definite[.]'" *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *12 (quoting *Petrobras*, 862 F.3d at 269).

Thus, in light of the defined class period, and the allegations and claims in this case, the undersigned respectfully recommends a finding that the proposed class is sufficiently ascertainable.

### ii.    Requirements of Rule 23(b)(3)

"Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority."  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *12 (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015)); *see* Fed. R. Civ. P. 23(b)(3) (listing requirement "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy").  There are four factors relevant to the superiority and predomination question:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

40

Fed. R. Civ. P. 230(b)(3).  When the parties have settled, "'[s]ome inquiries essential to litigation class certification,' including the issue of 'manageability — how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof," no longer pose an obstacle.  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *12 (quoting *Rosenfeld*, 2021 WL 508339, at *10).

### a.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id*. (quoting *Amchem Prods.*, 521 U.S. at 623).  "Predominance is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).

Here, the claims concern similar factual and legal inquiries, namely that Defendants' alleged misstatements were made with scienter.  *See* Dkt. No. 34 at 16; *see also Amchem Products*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

### b.    Superiority

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity of decision.'"  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *12 (quoting *Rosenfeld*, 2021 WL 508339); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)).  "The superiority requirement

is designed to avoid repetitive litigation and possibility of inconsistent adjudications." *Payment Card*, 330 F.R.D. at 57.

Here, in light of Hunter's assertion that class members likely number in the hundreds or thousands, it is almost a certainty that individual actions bringing these claims would be less efficient than conducting these proceedings on a class-wide basis. *See In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *12. Additionally, solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rules 23(a) and 23(b)(3). Dkt. No. 34 at 16. Thus, the undersigned recommends a finding that the superiority requirement is met.

For the foregoing reasons, the undersigned respectfully recommends that Hunter has shown that class certification and the final settlement are likely to be approved. Accordingly, the undersigned respectfully recommends finds that distribution of Notice to all class members is warranted. *See* Fed. R. Civ. P. 23(e)(1)(B).

### C.    Notice

Rule 23 directs that notice may be issued by either "United States mail, electronic means, or other appropriate means." Fed. R. Civ. 23(c)(2)(B). Further, the notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Rule 23, due process, and the PSLRA have similar requirements regarding notice. *Compare Vargas, supra, with Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652

(S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'"), *with* 15 U.S.C. § 78u-4(a)(7)(A)-(F).  At bottom, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores*, 396 F.3d at 113–14.  "Courts in this Circuit have found that a settlement notice is sufficient 'when it describe[s] the terms of the settlement generally, inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing.'" *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *13 (quoting *Payment Card*, 330 F.R.D. at 58).

Here, the parties have submitted various forms of proposed Notice for the Court's consideration, including long form notices, Summary Notices, and Postcard Notices.  Dkt. Nos. 36-2, 40-4, 40-6.  Additionally, as mentioned above, during a preliminary approval hearing held on June 6, 2025, the undersigned inquired why Notice was not both mailed and emailed to potential Class Members, whereupon Class Counsel stated doing both was possible.  Class Counsel subsequently updated the Parties' Proposed Order to reflect the simultaneous distribution of email and Postcard notice to potential Class Members.  *See* Dkt. No. 40-2 ¶ 16.

The parties' proposed Notice program now states that within 30 days of the Court's entry of the Proposed Order,

> Class Counsel, through the Claims Administrator, shall: (a) email links to the location of the Long Notice and Proof of Claim to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses; and (b) cause the Postcard Notice to be mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator.

*Id.* ¶ 16.  Similar notice plans have been held to satisfy the notice requirements of Rule 23, the PSLRA, and due process.  *See In re Blue Apron Holdings, Inc. Sec. Litig.*, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014).

The Long Notice provides more in-depth information regarding the lawsuit and claims process, and the Summary Notice and Postcard Notice provide distilled analogues.  Upon review of the parties' submissions, including provision of both email and Postcard Notice to Class Members, and the inclusion of language concerning Class Members' rights to have an attorney enter an appearance on their behalf, *see* Dkt. Nos. 40-4 at 3, 40-6 at 2, the undersigned respectfully recommends a finding that that the parties' proposed notices "contain the information required by Rule 23, set forth 'in plain, easily understood language.'"  *In re 3D Sys. Sec. Litig.*, 2023 WL 4621716, at *13 (quoting Fed. R. Civ. P. 23(c)(2)(B)).

## IV.    **Conclusion**

The undersigned respectfully recommends that Hunter's motion be granted and that the Court: (a) preliminarily certify the Settlement Class; (b) preliminarily approve the terms of the Settlement as set forth in the Stipulation; (c) approve the form and method for providing notice of the Settlement; and (d) set the Settlement Hearing in accordance with the parties' proposed schedule.  Dkt. No. 34 at 28.  The undersigned also respectfully recommends that Defendants be directed to provide supplemental notices in accordance with The Class Action Fairness Act of 2005 ("CAFA"), reflecting amendments made to the Summary Notice and Postcard Notice, and to the Proposed Order.  *See* 28 U.S.C. § 1715(b).

Further, the undersigned respectfully recommends the Court adopt the following schedule proposed by the parties:

| Event | Deadline for Compliance |
|---|---|
| Creating Settlement Website | No later than 40 calendar days after the entry of the Preliminary Approval Order |
| Emailing Links to the Long Notice and Claim Form, and/or Mailing Postcard Notice | No later than 40 calendar days after the entry of the Preliminary Approval Order |
| Publication of the Summary Notice | No later than 40 calendar days after entry of the Preliminary Approval Order |
| Date for Hunter to file papers in support of the Settlement, the Plan, and for Application of attorneys' fees and expenses | No later than 35 calendar days before the Settlement Hearing |
| Submission Deadline for Claim Forms | No later than 28 calendar days before the Settlement Hearing |
| Submission Deadline for Requests for Exclusion | No later than 28 calendar days before the Settlement Hearing |
| Submission Deadline for Objections | No later than 28 calendar days before the Settlement Hearing |
| Date for Hunter to file Reply Papers in Support of the Settlement, the Plan, and for Application of Attorneys' Fees and Expenses | No later than 7 calendar days before the Settlement Hearing |
| Date for the Settlement Hearing | Approximately 100 days after entry of the Preliminary Approval Order and/or on a date set by the Court |

Dkt. No. 34 at 20.

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days). Any requests for an extension of time for filing objections must be directed to Judge Gujarati. Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010);

*Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: Brooklyn, New York
      June 11, 2025               **SO ORDERED.**

                                   */s/ Joseph A. Marutollo*
                            JOSEPH A. MARUTOLLO
                            United States Magistrate Judge